UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SCOTT GREMILLION | * | CIVIL ACTION NO. 16-9849 |
| | * | |
| VERSUS | * | DIVISION:  1 |
| | * | |
| COX COMMUNICATIONS LOUISIANA ET AL. | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| | * | |
| ************************************* | * | |

## ORDER AND REASONS

Before the Court is the Motion for Conditional Certification as a Collective Action and Notice of Potential Class Members, filed by plaintiff Scott Gremillion (Rec. Doc. 83). Oral argument was held on June 14, 2017, and the matter was taken under submission. For the following reasons, the Motion is GRANTED in part.

### Background

Plaintiff Scott Gremillion worked as a cable technician for defendant Grayco Communications, L.P. ("Grayco") performing cable repair and installation services for customers of Cox Communications Louisiana, LLC ("Cox"). He filed this lawsuit on behalf of himself and others similarly situated on June 13, 2016, alleging that Grayco and Cox are liable under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*, and Louisiana's wage payment laws, La. Rev. Stat. § 23:631, *et seq.,* for failing to pay him and other technicians for work in excess of 40 hours in a work week "through the guise of the pay-per-point/unilateral charge-back scheme." (Rec. Doc. 1, ¶13).

On November 1, 2016, the District Court dismissed Gremillion's claims under La. Rev. Stat. § 23:631 and § 23:632, but held that he had stated a claim under § 23:635. (Rec. Doc. 41). The parties consented to proceed before the undersigned magistrate judge and on December 8, 2016, the District Judge ordered the matter be referred to the undersigned pursuant to 28 U.S.C.

1

636(c). (Rec. Doc. 61). The parties agreed to conduct discovery and file a motion for summary judgment on the issue of whether Cox and Grayco were joint employers before addressing conditional class certification. At that time, they also agreed "to toll the statute of limitations for a period of 90 days (such that the parties will observe the limitations period as 90 days longer than it would otherwise be)." (Rec. Doc. 60). On April 3, 2017, the undersigned granted Cox's motion for summary judgment on the issue of joint employer liability, finding that Cox was not Gremillion's employer under the FLSA or Louisiana's wage payment laws. (Rec. Doc. 79). Cox was dismissed and Gremillion is proceeding against Grayco.

Gremillion now seeks to have this matter conditionally certified as a collective action under the FLSA. He proposes to define the putative class as follows:

All individuals who:

1. Worked for Grayco at any time during the past three years and;
2. Worked as a cable technician providing cable repair and installation services on behalf of Grayco and were paid upon a "point" system.

In his declaration under penalty of perjury, Gremillion states that he and other technicians were paid on a per-job basis and that technicians were not paid time and half for hours worked over 40 in one week.  He says technicians were paid the same rate regardless of the number of hours it took to complete a job and regardless of how much time was spent picking up equipment and/or traveling to and from each job. In his Complaint, Gremillion explains that he and other Grayco technicians accumulated "points" based on the type of job assignments they performed and they were paid based on the number of points they accumulated. Grayco does not dispute this assertion at this stage. Indeed, Gremillion cites the deposition testimony of Grayco's corporate representative Nathan Williams, Jr., who agreed that prior to November 2016, all technicians were paid on a point basis. Williams testified that since that time, technicians have been paid on an

hourly basis. There was some dispute in the briefing regarding whether all Grayco technicians nationwide are paid pursuant to this system or only technicians in Louisiana. However, at oral argument, counsel for Gremillion conceded that he only seeks to certify a class of technicians who worked in Louisiana.

In support of his claim that he and other technicians were not paid for overtime work, Gremillion declares that he worked at least 60 hours almost every week and often received paychecks as small as $300 a week. According to the allegations of his Complaint, Gremillion typically started work at 7:00 a.m., gathering necessary equipment from a warehouse. He would visit approximately 7 to 10 customers' homes and would not typically conclude work until 7:00 p.m. He says he worked six days a week. In the memorandum in support of the present motion, counsel for Gremillion further elaborates that his work included driving to customers' homes and businesses to perform work, calling customers to confirm appointments, attending meetings with Grayco supervisors, submitting paperwork or electronic notification of completed jobs at the end of each day, and, when necessary, returning to Grayco's offices at the end of each day. Counsel for Gremillion also submits that "all cable technicians hired by Grayco" performed the same duties. Gremillion asserts that Grayco has actual and constructive notice or knowledge of this "off-the-clock work."

Gremillion's Complaint also alleges that he was not always paid the required minimum wage. Gremillion declares that technicians were often fined and received deductions from their paychecks as a result of alleged failed quality check inspections, equipment failures, customer service calls by customers previously serviced by the technician (even if the call did not relate to the quality of the work performed by the technician), arriving late to a service call, and equipment not properly documented by management. The Court notes that the description of the lawsuit in

the proposed notice that Gremillion submitted did not describe claims related to the purported failure to pay minimum wage. However, at oral argument, Gremillion's counsel insisted that these claims remain part of the lawsuit.

Finally, Gremillion declares that he is personally aware of other similarly situated employees and former employees who have been improperly compensated in violation of the FLSA. As Grayco pointed out, Gremillion did not provide any affidavits of these other employees. At oral argument, counsel for Gremillion explained that he has not contacted any other employees, but he knows that similarly situated employees exist because all Louisiana employees worked under the point system. He added that Gremillion does not have easy access to other potential class members because he no longer works for Grayco.

<u>Law and Analysis</u>

1. *FLSA Collective Action*

Under the FLSA, employers are obligated to pay non-exempt employees a minimum wage and one-and-a-half times their regular rate of pay for all hours worked in excess of 40 per week. 29 U.S.C. §§ 206, 207. An employer who violates these requirements faces liability for the amount of unpaid minimum wage, unpaid overtime compensation, liquidated damages, and attorney's fees. 29 U.S.C. § 216(b). Employees may institute an action to recover under the FLSA on behalf of themselves or on behalf of themselves and others "similarly situated." <u>Id.</u> As with a class action, plaintiffs proceeding with a "collective action" are afforded "the advantage of lower individual costs to vindicate rights by the pooling of resources." <u>Johnson v. Big Lots Stores, Inc.</u>, 561 F. Supp. 2d 567, 572 (E.D. La. 2008) (quoting <u>Hoffmann-La Roche Inc. v. Sperling</u>, 493 U.S. 165, 170 (1989) (quotation marks omitted). But unlike a class action under Federal Rule of Civil Procedure 23(b) where a potential plaintiff must "opt out" to preserve his or her individual claim,

in a collective action under the FLSA, plaintiffs "must affirmatively join the lawsuit or 'opt in.'" Id. at 573.

The Fifth Circuit Court of Appeals has recognized the use of two different approaches to determine whether to certify an FLSA collective action. Portillo v. Permanent Workers, L.L.C., 662 F. App'x 277, 279–80 (5th Cir. 2016). "The first approach tracks Rule 23, where district courts evaluate FLSA collective actions against the well-established requirements of numerosity, commonality, typicality, and adequacy." Id. at 280. Under the second approach, the Court engages in a two stage certification process in which the Court first conditionally certifies a class and later, after discovery is complete, considers a motion to decertify the class. Id.; see Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213 (5th Cir. 1995) (describing Lusardi v. Xerox Corp., 118 F.R.D. 351, 352–53 (D.N.J. 1987)). Courts in this district have tended to apply the second, so-called Lusardi, approach. E.g., Chapman v. LHC Grp., Inc., 126 F. Supp. 3d 711, 720 (E.D. La. 2015); White v. Integrated Elec. Techs., Inc., No. 12-359, 2013 WL 2903070, at *3 (E.D. La. June 13, 2013); Lang v. DirecTV, Inc., No. CIV.A. 10-1085 G (1), 2011 WL 6934607, at *6–7 (E.D. La. Dec. 30, 2011); Xavier v. Belfor USA Grp., Inc., 585 F. Supp. 2d 873, 876 (E.D. La. 2008); Williams v. Bally's Louisiana, Inc., No. CIV.A. 05-5020, 2006 WL 1235904, at *2 (E.D. La. May 5, 2006). The parties here do not dispute that the two-step Lusardi approach applies in this case. The Court agrees.

Under Lusardi, at this first, or "notice stage," the Court determines "whether Plaintiffs have demonstrated that a putative class of 'similarly situated' technicians exists, such that the Court should provide notice of this case to potential class members and provide them with an opportunity to 'opt-in' to the case.'" White, 2013 WL 2903070, at *3. "[T]he plaintiff bears the burden of making the preliminary factual showing that other similarly situated individuals exist . . . ." Id.;

5

see Lima v. Int'l Catastrophe Sols., Inc., 493 F. Supp. 2d 793, 798 (E.D. La. 2007). The Court typically basis its decision "only on the pleadings and any affidavits which have been submitted." Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213–14 (5th Cir. 1995) *abrogated on other grounds by* Desert Palace, Inc. v. Costa, 539 U.S. 90, 101 (2003).

The standard at this stage has been described as "lenient," but "by no means automatic." Lang, 2011 WL 6934607, at *4. "A plaintiff must allege a common policy or plan and 'make a modest factual showing sufficient to demonstrate that [he or she] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" Simmons v. T-Mobile USA, Inc., No. CIV A H-06-1820, 2007 WL 210008, at *4 (S.D. Tex. Jan. 24, 2007) (quoting Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 91, 95 (S.D.N.Y. 2003)) (internal quotation marks omitted); see Donohue v. Francis Servs., Inc., No. CIV.A. 04-170, 2004 WL 1161366, at *1 (E.D. La. May 24, 2004) ("A court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice."). While plaintiff's burden is "*not* heavy," Prejean v. O'Brien's Response Mgmt., Inc., No. CIV.A. 12-1045, 2013 WL 5960674, at *5 (E.D. La. Nov. 6, 2013), courts must be careful because "too lenient an approach at the notice stage can lead to an employer being burdened by something that may be no more than a frivolous fishing expedition conducted by the plaintiff at the employer's expense." White, 2013 WL 2903070, at 3 (quoting Clay v. Huntington Ingalls Inc., Civ. Act. No. 09-7625, *14 (E.D. La. Sept 29, 2011) (quotation marks omitted).

Gremillion argues that conditional certification is appropriate here because Gremillion and the putative class members were all subjected to the same policy of being paid on a point system without compensation for overtime work. He argues that all cable technicians hired by Grayco perform work like driving to the warehouse to pick up equipment and driving to customers' homes,

6

and all technicians are paid on a point system that does not take into consideration the actual time it takes to complete a job. He relies on the allegations in his Complaint, the statements in his Declaration, and the deposition testimony of Grayco's corporate representative to the effect that all technicians were paid on a point system until November 2016. Gremillion adds that he and other technicians were subject to deductions from their paychecks causing them to earn less than the minimum wage. Grayco's opposition memorandum was primarily focused on its argument that Gremillion failed to present any evidence to establish that there are similarly situated individuals outside of Louisiana. As noted above, Gremillion's counsel clarified at oral argument that Gremillion is only seeking to conditionally certify a class of Louisiana technicians. Grayco does not appear to contest that Gremillion is similarly situated to the Louisiana technicians who all performed work for Cox. The Court finds that Gremillion has met his burden at this notice stage to show that he is similarly situated to the other putative class members because it is undisputed that all Louisiana technicians were paid under the same point-based policy that allegedly violates the FLSA.

Grayco also argues that the class cannot be certified because Gremillion has not submitted affidavits from any potential plaintiffs, nor even identified any other potential plaintiffs. It cites Rodriguez v. Alsalam, Inc., No. CV 16-6453, 2017 WL 699820, at *3 (E.D. La. Feb. 22, 2017), where the district court denied conditional class certification where plaintiff had not provided any affidavits from other employees, failed to identify other individuals who were not paid overtime, and failed to suggest that other individuals desired to join the class. Importantly, however, the key factor in the court's decision in Rodriguez was that the plaintiff had not alleged that he and the other putative class members were "victims of a singular decision, policy, or practice." Id. Instead, the plaintiff in Rodriguez simply alleged that he had not been paid minimum wage or overtime

and his co-workers had not either. Id.  Similarly in the Crowley v. Paint & Body Experts of Slidell, Inc., matter cited by Grayco, a key factor in denying conditional class certification was the court's finding that instead of alleging a single policy or plan, the two named plaintiffs had described two different overtime policies. No. CIV.A. 14-172, 2014 WL 2506519, at *6 (E.D. La. June 3, 2014).

The Court must reject Grayco's argument that Gremillion's failure to include affidavits of other employees is fatal to his motion for conditional certification as a collective action. As noted, the cases cited by Grayco turn on the more critical factor of whether the plaintiff has alleged a common policy. Here, Gremillion has satisfied this threshold by declaring that he and other technicians are paid on a point system that does not account for the hours actually worked. This is a common policy that affects all technicians covered by it. Their work necessarily requires them to pick up equipment and travel between customers, so payment on a point system that does not account for hours worked necessarily affects them all with the possibility that they will not have earned minimum wage or will have worked more than 40 hours without compensation for such time at one-and-a-half times the normal pay. At this stage, Gremillion's declaration is enough. The Court notes that Grayco does not dispute this payment method was a policy covering all technicians performing work for Cox customers in Louisiana until November 2016. It does not claim that individual technicians performing Cox work in Louisiana might be subject to different policies or might display individual differences that would make administration of this lawsuit as a collective action inefficient.  Accordingly, as to technicians performing work for Cox in Louisiana, Gremillion has established that he and such other technicians are sufficiently similarly situated that notice of this lawsuit should be provided to them.

Grayco also argues that Gremillion has not shown that other individuals want to opt-in to this lawsuit because no other individuals have opted in since the filing. But this does not preclude

certification of a class. It has been observed that "there is no categorical rule that Plaintiffs must submit evidence at this time that other technicians seek to opt-in to this case." White, 2013 WL 2903070, at *7. "**[I]t is enough for the plaintiff to present evidence that there *may* be other aggrieved** individuals to whom a class action notice should be sent, without requiring evidence that those individuals actually intend to join the lawsuit." Id. (quoting Villarreal v. St. Luke's Episcopal Hosp., 751 F. Supp. 2d 902, 916 (S.D. Tex. 2010)) (emphasis in original). For example, in Banegas v. Calmar Corp., a court in this district ruled that the plaintiff's failure to identify other employees who desired to join the litigation did not prevent class certification. Civ. Action No. 15-593, 2015 WL 4730734, at *6 (E.D. La. Aug. 10, 2015). The court refused to impose a requirement that the plaintiff obtain affidavits of other potential class members with an intent to join the lawsuit when the statute did not call for such evidence. Id. The Court observed that "[t]he Defendant's concern appears to be primarily with the likelihood that similarly situated individuals will, in fact, desire to opt-in to the proposed collective action . . . [but] [t]his is not a valid or recognized basis for denying conditional certification under the FLSA." Id.

Similarly here, the Court finds that Grayco's concern that Gremillion has failed to identify other plaintiffs with an intent to join this lawsuit is misplaced. If there are such plaintiffs, they will join when they receive notice of the lawsuit. If there are not, then they will not do so. Critically here, Gremillion has already satisfied the Court that he is similarly situated to other technicians who were subject to the same point-based-pay policy. To put the burden on Gremillion at this stage to reach out to other technicians puts the cart before the horse. Gremillion is no longer working for Grayco and even if he was, the nature of the technicians' work does not lend itself to break-room conversations or collaboration through which Gremillion might be able to discuss this lawsuit. It is through this notice phase that Gremillion will obtain the contact information he needs to reach

9

out to the other technicians to determine whether they desire to join. What is important at this stage is that there are similarly situated individuals who may be interested in joining the lawsuit.

   2. *Proposed Notice Form and Process*

The Court is in agreement with the parties that they should first meet, confer, and attempt to agree on the form of a proposed notice. The Court provides the following guidance as the parties do so. First, as noted at oral argument, unless the parties agree otherwise, the original time table agreed to by them and ordered by this Court in its scheduling order will be the time period used here. Thus, "Grayco Communications, L.P. will have 30 days to provide a list of potential plaintiffs and their contact information. Following receipt of the list, Plaintiff will have 15 days to mail notice, and potential plaintiffs will have 60 days from the expiration of such 15 day period to opt in." (Rec. Doc. 66, at 2). The Court notes that this original schedule did not contemplate a reminder notice as requested by Gremillion in his proposed notice and the Court will not order a reminder notice unless Gremillion can show good cause for one or the parties agree to a reminder.[1]

With regards to the type of information Grayco will provide to Gremillion, the parties agreed at oral argument that names, addresses, and—to the extent Grayco has them—e-mail addresses will be provided. Further, Grayco shall provide this information in a usable, electronic format.

Gremillion proposes to provide notice to technicians working for Grayco as early as three years before the lawsuit was filed. First, the Court notes that under the FLSA, in the case of a collective action, the action:

---

[1] The Court takes note of the cases cited by Grayco where reminder notices were not allowed. E.g., Richard v. Flower Foods, Inc., 222 F. Supp. 3d 516 (W.D. La. 2016) (finding reminder notices unnecessary); Roberts v. S.B. S. Welding, LLC, No. 3:14-CV-3617-B, 2015 WL 8773610, at *3 (N.D. Tex. Dec. 15, 2015) (noting that courts decline to allow reminder notices where plaintiffs fail to show why such reminder notices would be necessary and because such reminders might "give the appearance that the court is endorsing the plaintiffs' position"). However, the Court also notes that multiple notices have been ordered in this district. E.g., White, 2013 WL 2903070, at *11 (ordering notice to be provided seven days from the Court's order and again 30 days thereafter).

> shall be considered to be commenced in the case of any individual claimant--
> **(a)** on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
> **(b)** if such written consent was not so filed or if his name did not so appear--***on the subsequent date on which such written consent is filed in the court in which the action was commenced***.

29 U.S.C. 256 (emphasis added); see Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 916–17 (5th Cir. 2008) ("[I]n a FLSA collective action, the statute of limitations for a named plaintiff runs from the date that the plaintiff files the complaint, while the limitations period for an opt-in plaintiff runs from the opt-in date."). Thus, the earliest appropriate trigger date for calculating the notice period is the date of this Court's ruling, not the date the lawsuit was filed. Taking into account the parties' 90-day tolling agreement,[2] the Court will use March 24, 2017[3] as the trigger date for the notice period.

---

[2] Although at oral argument the parties seemed to be in agreement that the notice period should run from the date of filing of the Complaint, the Court finds little support for this approach. To do so here would result in notice being sent out to a group of individuals whose claims have already expired. Further, when the parties agreed to a 90-day tolling period, they clearly contemplated that the statute of limitations would run backward from a future event relating to the motion to conditionally certify, not from a fixed date in the past, such as the filing of the Complaint. If they had believed the latter, the delay caused by addressing the joint employer issue first would not have justified a 90-day tolling agreement. The Court notes that under the circumstances of this case, a 90-day tolling of the statute of limitations is appropriate because of the delay caused by dealing with the joint employer issue before the motion to conditionally certify the class. It was the defendants who requested the certification issue be delayed, and the plaintiff agreed on the condition that the statute of limitations be tolled. The FLSA statute of limitations "is subject to tolling on equitable grounds." Lima v. Int'l Catastrophe Sols., Inc., 493 F. Supp. 2d 793, 803 (E.D. La. 2007); see Israel Antonio-Morales v. Bimbo's Best Produce, Inc., No. CIV.A.8:5105, 2009 WL 1591172, at *2 (E.D. La. Apr. 20, 2009) (ordering that the statute of limitations be equitably tolled for potential opt-in plaintiffs while the case was stayed pending a related criminal action). Importantly, however, equitable tolling is a "narrow exception . . . that should be applied sparingly." Sandoz v. Cingular Wireless, L.L.C., 675 F. App'x 448 (5th Cir. 2017) (quoting Phillips v. Leggett & Platt, Inc., 658 F.3d 452, 457 (5th Cir. 2011)). The plaintiff must show "1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. (quoting Menominee Indian Tribe of Wisconsin v. United States, 136 S. Ct. 750, 755 (2016)). Delay on the part of plaintiff or its counsel would not justify equitable tolling, but in some extraordinary cases, courts in other districts have tolled the statute of limitations in recognition of the delay caused when a court's heavy docket results in a long delay between the filing of a motion for conditional class certification and the ruling on such motion. Yahraes v. Rest. Assocs. Events Corp., No. 10-CV-935 SLT, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011) ("The delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance[ ]' justifying application of the equitable tolling doctrine.") (quoting Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003), as amended (July 29, 2003)) (alteration in original). McGlone v. Contract Callers, Inc., 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) ("While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings."). Here, the delay of approximately 90 days was caused by the defendants and not the plaintiff.

[3] The date of this ruling is June 22, 2017, and 90 days before the ruling is March 24, 2017.

With regards to whether to use a two- or three-year notice period, the Court finds that at this early stage, a three year notice period is appropriate. A cause of action under the FLSA is subject to a two year statute of limitations "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). The appropriate standard for determining whether the three-year statute of limitations applies is whether the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 134 (1988). As Grayco points out, "the employee has the burden of demonstrating willfulness for the three-year limitations period to apply." Mohammadi v. Nwabuisi, 605 F. App'x 329, 332 (5th Cir. 2015). However, at the notice stage, Gremillion is not required to come forth with evidence of Grayco's willfulness or recklessness. Foraker v. Highpoint Sw., Servs., L.P., No. CIV.A. H-06-1856, 2006 WL 2585047, at *5 (S.D. Tex. Sept. 7, 2006) ("[T]he facts concerning willfulness or bad faith must be elicited during discovery. [Defendant] cites no authority that requires Plaintiffs at this early stage to make a detailed factual showing on these matters."); see Lee v. Metrocare Servs., 980 F. Supp. 2d 754, 768–69 (N.D. Tex. 2013) (noting that plaintiffs had not "expressly alleged that the violations were willful," but declining to determine willfulness at the notice stage and allowing the scope of the notice to include employees employed within a three year period).

In support of its argument that a two-year notice period should be used, Grayco cites Skelton v. Sukotha, LLC, where the district court found the plaintiffs' allegation that the defendants used a checkout sheet to calculate the portion of class members' tips sufficient to justify a three-year notice period for potential plaintiffs. 994 F. Supp. 2d 785, 788 (E.D. La. 2014). The Skelton court also observed that the issue "would benefit from discovery." Id. Similarly, another

court in this district recently held that "[b]ecause the Court finds that additional discovery will likely reveal whether a two- or three-year statute of limitations is appropriate, the Court finds that conditional certification of a three-year class is appropriate at this stage, subject to any motion for decertification following discovery." Marshall v. Louisiana, No. CV 15-1128, 2016 WL 279003, at *11 (E.D. La. Jan. 22, 2016). In Marshall, the court noted that while the plaintiff requested a three-year period, it had not clearly argued that defendants had willfully violated the FLSA. Id. Nonetheless, the court observed that "[c]ourts within the Fifth Circuit have often held that, given the low standard employed at the first step of the Lusardi approach, and the fact-intensive nature of the question of willful conduct, plaintiffs need not prove willfulness at the conditional certification stage." Id. The Court takes the same approach here in finding that the determination of whether Grayco was willful in using a point system without consideration of hours actually worked is better decided after discovery has been conducted. While Gremillion did not explicitly allege that Grayco acted willfully or knowingly and the Court has struggled to find any facts alleged that would suggest willfulness, the Court takes note that willfulness might be implied by Gremillion's allegation that Grayco "did not pay Plaintiffs for all hours worked in order to avoid overtime payments." At this early stage, the Court is not convinced that Gremillion will **not** be able prove willfulness. Accordingly, a three year period will be used for notice purposes. There may be some plaintiffs that receive notice who ultimately have no claim if willfulness cannot be shown because they were only employed between two and three years earlier. Thus, the Court will require that the notice to potential plaintiffs include the following statement "Claims of individuals who have not worked for Grayco within the two years prior to the time they join this lawsuit may be time-barred and, if so, no recovery will be available."

In accordance with the Court's findings above regarding the scope of the class and the appropriate time period for notice, the class will be defined as follows:

*All individuals who worked as a cable technician providing cable repair and installation services for Grayco Communications, L.P., in Louisiana at any time since March 24, 2014 and were paid through a point-based system.*

Finally, the Court considers Gremillion's request that Grayco be ordered not to communicate directly or indirectly with putative class members about any matters which touch on or concern settlement of any outstanding wage claims, or other matters related to this suit, during the opt-in period. Grayco has not opposed this request. However, the Court finds that Gremillion has not established the necessity for such an order. In Rule 23 class actions, the Supreme Court has required that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Gulf Oil Co. v. Bernard, 452 U.S. 89, 101 (1981). The Gulf Oil standard has been applied to FLSA collective actions. E.g., Jaso v. Bulldog Connection Specialists LLC, No. 2:15-CV-269, 2015 WL 11144603, at *6 (S.D. Tex. Oct. 15, 2015); Garcia v. TWC Admin., LLC, No. SA:14-CV-985-DAE, 2015 WL 1737932, at *3 (W.D. Tex. Apr. 16, 2015). Thus,

> An applicant for an order restricting communications in a putative FLSA collective action must show two things: "(1) that a particular form of communication has occurred or is threatened to occur, and (2) that the particular form of communication at issue is abusive and threatens the proper functioning of the litigation."

Jaso, 2015 WL 11144603, at *6 (quoting Garcia v, 2015 WL 1737932, at *3). Gremillion has not made such a showing. To the extent such an order becomes necessary in the future, Gremillion may raise the issue at that time.

Conclusion

For the foregoing reasons, IT IS ORDERED that the plaintiff's motion for conditional certification as a collective action is GRANTED in part. This Court hereby conditionally certifies this matter as a collective action as to all individuals who worked as a cable technician providing cable repair and installation services for Grayco Communications, L.P., in Louisiana at any time since March 24, 2014 and were paid through a point-based system. IT IS FURTHER ORDERED that counsel for the parties shall meet and confer regarding the notice and consent forms that will be distributed to class members. IT IS FURTHER ORDERED that the notice shall contain the following notice "Claims of individuals who have not worked for Grayco within the two years prior to the time they join this lawsuit may be time-barred and, if so, no recovery will be available." IT IS FURTHER ORDERED that in the event the parties agree on the proposed notice and consent forms, the parties shall file such forms with the Court no later than July 13, 2017. If the parties are unable to agree on the language of the notice and consent forms, the parties shall file with the Court (1) their proposed notice and consent forms and (2) their objections to same, with supporting authority, no later than July 20, 2017. Because there is no dispute regarding the information to be provided, IT IS FURTHER ORDERED that Grayco provide all known names, addresses, and e-mail addresses for all class members in Grayco's possession in a usable electronic format no later than thirty days from the date of this Order.

New Orleans, Louisiana, this 22nd day of June, 2017.

                                                Janis van Meerveld
                                          United States Magistrate Judge