UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| SCOTT GREMILLION, | CIVIL ACTION |
| *Plaintiff* | NO. 16-9849 |
| VERSUS | DIVISION: 1 |
| GRAYCO COMMUNICATIONS, L.P. | MAGISTRATE JUDGE |
| *Defendant* | JANIS VAN MEERVELD |

Order and Reasons

Before the Court is the Motion to for Partial Summary Judgment filed by Plaintiffs (Rec. Doc. 186). For the following reasons, the Motion is DENIED.

Procedural Background

Plaintiff Scott Gremillion worked as a cable technician for defendant Grayco Communications, L.P. ("Grayco") performing cable repair and installation services for customers of Cox Communications Louisiana, LLC ("Cox"). He filed this lawsuit on behalf of himself and others similarly situated on June 13, 2016, alleging that Grayco and Cox were liable under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*, and Louisiana's wage payment laws, La. Rev. Stat. § 23:631, *et seq.,* for failing to pay him and other technicians for work in excess of 40 hours in a work week "through the guise of the pay-per-point/unilateral charge-back scheme." (Rec. Doc. 1, ¶13).

On November 1, 2016, the District Court dismissed Mr. Gremillion's claims under La. Rev. Stat. § 23:631 and § 23:632, but held that he had stated a claim under § 23:635. (Rec. Doc. 41). The parties consented to proceed before the undersigned magistrate judge and on December 8, 2016, the District Judge ordered the matter be referred to the undersigned pursuant to 28 U.S.C. 636(c). (Rec. Doc. 61). The undersigned granted Cox's motion for summary judgment on the issue

1

of joint employer liability, finding that Cox was not Mr. Gremillion's employer under the FLSA or Louisiana's wage payment laws. (Rec. Doc. 79). Cox was dismissed.

The Court then granted Mr. Gremillion's motion to conditionally certify this case as a collective action under the FLSA, defining the class as follows: all individuals who worked as a cable technician providing cable repair and installation services for Grayco Communications, L.P., in Louisiana at any time since March 24, 2014 and were paid through a point-based system. (Rec. Doc. 90). The deadline for plaintiffs to join the lawsuit has now passed and the parties are proceeding with discovery. The Plaintiffs have moved for partial summary judgment that Gremillion and the opt-in plaintiffs were employees under the FLSA while working as cable-technicians for Grayco. (Rec. Doc. 186).

Law and Analysis

1. *Summary Judgment Standard*

Summary Judgment under Federal Rule of Civil Procedure 56 must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56. The movant has the initial burden of "showing the absence of a genuine issue as to any material fact." Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). The respondent must then "produce evidence or designate specific facts showing the existence of a genuine issue for trial." Engstrom v. First Nat. Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995). Evidence that is "merely colorable" or "is not significantly probative" is not sufficient to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

"An issue is material if its resolution could affect the outcome of the action." Daniels v. City of Arlington, Tex., 246 F.3d 500, 502 (5th Cir. 2001). Thus, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that

party." Anderson, 477 U.S. at 249. Although this Court must "resolve factual controversies in favor of the nonmoving party," it must only do so "where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (quoting Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Court must not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

Summary judgment is also appropriate if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

2. *"Employer" status under FLSA*

Under the Fair Labor Standards Act ("FLSA"), employers must pay their employees a minimum wage and must compensate them at one and one-half times the regular rate of pay for hours worked over forty hours in a workweek. 29 U.S.C. §§ 206(a), 207(a). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." Id. § 203(d). The United States Court of Appeals for the Fifth Circuit has described this definition as "particularly broad." Hopkins v. Cornerstone Am., 545 F.3d 338, 343 (5th Cir. 2008). "The remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." McLaughlin v. Seafood, Inc., 867 F.2d 875, 877 (5th Cir. 1989).

"To determine if a worker qualifies as an employee, [the court focuses] on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." Hopkins, 545 F.3d at 343.

3

> To gauge the degree of the worker's dependency, [the court considers] five factors:
> (1) the degree of control exercised by the alleged employer;
> (2) the extent of the relative investments of the worker and alleged employer;
> (3) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer;
> (4) the skill and initiative required in performing the job; and
> (5) the permanency of the relationship.

Reich v. Circle C. Investments, Inc., 998 F.2d 324, 327 (5th Cir. 1993). "No single factor is determinative." Hopkins, 545 F.3d at 343.

For example, in affirming the district court's dismissal of a case filed by welders against their alleged employer on summary judgment, the Fifth Circuit concluded the welders were independent contractors based on the following factors:

> the Welders' relationship with [the Defendant] was on a project-by-project basis; the Welders worked from job to job and from company to company; many of the Welders spent little time working for [the Defendant]; the Welders worked while aware that [Defendant] classified them as independent contractors, and many of them classified themselves as self-employed; the Welders were highly skilled; [Defendant]'s customers, the gas companies, tested and certified each welder before each project; [Defendant] had no control over the methods or details of the welding work; when on a [job for Defendant], the Welders performed only welding services; the Welders supplied their own welding equipment; and their investments in welding equipment averaged $15,000 per Welder.

Carrell v. Sunland Const., Inc., 998 F.2d 330, 334 (5th Cir. 1993).

In contrast, the Fifth Circuit in Cromwell v. Driftwood Elec. Contractors, Inc., reversed and remanded where the district court had found on summary judgment that the cable splicers were independent contractors. 348 F. App'x 57, 61 (5th Cir. 2009). In finding insufficient facts to establish that the cable splicers were in business for themselves, the Fifth Circuit pointed out that

> [they] worked on a steady and reliable basis over a substantial period of time-approximately eleven months-exclusively for their purported employers. The permanency and extent of this relationship, coupled with [the purported employers'] complete control over [the cable splicers'] schedule and pay, had the effect of severely limiting any opportunity for profit or loss by [the cable splicers]. Although it does not appear that [the cable splicers] were actually prohibited from taking other jobs while working for [the purported employers], as a practical matter

4

> the work schedule establish[ed] by [the purported employers] precluded significant extra work. Also, the fact that [the purported employers] provided [the cable splicers] with their work assignments limited the need for [the cable splicers] to demonstrate initiative in performing their jobs.

Id.

Here, Plaintiffs seek to establish that the technicians were economically dependent upon Grayco and were therefore Grayco's employees under the FLSA. The Court considers the arguments and evidence presented by the parties for each factor.

   a. *Degree of Control*

"Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity." Brock v. Mr. W Fireworks, Inc., 814 F.2d 1042, 1049 (5th Cir. 1987) (quoting Usery v. Pilgrim Equip. Co., 527 F.2d 1308, 1312–13 (5th Cir. 1976)). For example, in Brock, the Fifth Circuit found that all meaningful aspects of the firework stand business were controlled not by the operators, but by the alleged employer, which controlled "the location and size of the stands, the fixing of prices, the merchandise sold, the display of the merchandise, the hours that operators must attend the stands, most of the advertising, and the method of paying the operators." Id. at 1049. In contrast, in affirming the jury's verdict finding satellite television installers were independent contractors, not employees in Eberline v. Media Net, L.L.C., the Fifth Circuit found the installer exerted "control over meaningful aspects of his business life," where "installers were able to adjust their own work schedule based on the customers' needs," "there were no repercussions for late arrivals," plaintiff "was not required to check in with the [company] when he arrived," the company "did not supervise installations, inspect the installers' work, or even assign installation jobs to specific installers," "the installers could determine how many days they worked, which days they worked,

and what time slots they were available to work," at least one installer testified that he "had previously refused assigned installation jobs with no penalty," installers were able to perform custom work at the request of a customer on their own terms, and installers were allowed to hire other workers to assist them. 636 F. App'x 225, 227-29 (5th Cir. 2016) (unpublished)

Here, plaintiffs argue that Grayco exercised control over them because it effectively required technicians to work only for Grayco without interference of other commitments. For example, they point out that when individuals sought to become technicians for Grayco, they filled out an application that asked, in part, "If applying for a technician, are you able to work 12 hours per day, six days per week?" *Pl.'s Statement of Undisputed Facts*, Rec. Doc. 186-1, ¶ 8. Further, Grayco's corporate representative agreed that Grayco would assume an applicant answering "yes," would have no commitments that interfere with those hours. Id. at 6. But Grayco disputes the suggestion that the technicians did not have other commitments, pointing to Glaspie's testimony that some of the technicians had side jobs. *Def.'s Statement of Disputed Facts*, Rec. Doc. 192-1, ¶2. Grayco also points out that the Subcontractor Agreement signed by the technicians specified that the technician "is expressly free to perform services for other parties while performing services for" Grayco. (Rec. Doc. 192-7, at 4).

As further evidence of Grayco's control, it is undisputed that Grayco imposed quality assurance guidelines on the work performed by the technicians. *Pl.'s Statement of Undisputed Facts*, Rec. Doc. 186-1, ¶ 12.

Plaintiffs also argue that Grayco controlled the technicians' work schedules. It is undisputed that Grayco technicians were required to be on their first job no later than 8:07 a.m. Id. ¶13; Rec. Doc. 186-12, at 16. Grayco would provide the technicians with a work schedule setting

6

the days of the week the technician would work. (Rec. Doc. 186-12, at 10). Each day, Grayco[1] would assign tasks to the technicians working that day. Id. at 8-9; *Pl.'s Statement of Undisputed Facts*, Rec. Doc. 186-1, ¶ 14. Each morning, a technician could log into his mobile device to see his assigned route for the day. *Pl.'s Statement of Undisputed Facts*, Rec. Doc. 186-1, ¶ 15. Technicians were expected to complete tasks in the allotted time. Id. ¶ 16. Grayco concedes that jobs were assigned to two-hour time intervals, but argues there is a fact issue as to whether technicians were required to comply with them. *Def.'s Statement of Disputed Facts*, Rec. Doc. 192-1, ¶7. Grayco points to the testimony of plaintiff Jonathan Charles that he would move on to jobs in the next time slot if he completed all the jobs in the current time slot. Id. Grayco also points to the testimony of plaintiff Freddy Arano that nearly every day he would spend two or three hours doing nothing but sitting in his truck or grabbing a coffee. Id. But in contrast to Charles' testimony, Arano explained that he was idle because he could not move on to jobs in the next time interval if he completed all the work in the current interval. (Rec. Doc. 192-3, at 51-52). He insisted he had no choice. Id. at 52. Rather than indicating a technician could rearrange his own schedule, the testimony of Arano indicates the schedule was mandated by Grayco.

There is some dispute regarding the training requirements and how that reflects Grayco's control of the technicians. Plaintiffs submit that Grayco required technicians undergo four weeks of training if they did not have at least six months of experience as a technician. *Pl.'s Statement of Undisputed Facts*, Rec. Doc. 186-1, ¶ 11. Indeed, Grayco's corporate representative explained that if technicians "do not have typically at least six months experience, we generally put them through roughly about four weeks of training." (Rec. doc. 186-12, at 19). Grayco disputes whether

---

[1] Grayco states, without any supporting evidence, that Cox and not Grayco sets the intervals. However, Grayco does not appear to dispute that Grayco also required the technicians to complete work at the set interval. Nor does Grayco appear to dispute that the technicians certainly did not set the intervals.

technicians were subject to a training requirement. For example, Grayco notes that plaintiff Rahman Rahman testified that he did not receive any training because he had already been trained through his work as a cable technician for another company. *Def.'s Statement of Disputed Facts*, Rec. Doc. 192-1, ¶5. Grayco notes that the other technicians that previously worked for the same company as Rahman did not receive any training at Grayco. Id.  In contrast, Grayco notes that plaintiff Jonathan Charles testified that he underwent about five weeks of training although he had over six months prior experience in the industry. Id.

Grayco adds that the technicians knew they were classified as independent contractors. *Def.'s Statement of Disputed Facts*, Rec. Doc. 192-1, ¶ 10.

The facts here are a far cry from those in the Eberline case cited by Grayco where the Fifth Circuit found the "control" factor supported an independent contractor finding. Here, Grayco set the technicians' schedules, including the days of the week they would work as well as the work they would perform each day, and imposed quality assurance guidelines. Although there is undisputed evidence that Grayco or Cox, not the technicians, set the time interval in which work would be performed, there is conflicting evidence regarding whether technicians could begin the next time slot's jobs early. There is also conflicting evidence regarding the extent technicians performed work besides their Grayco work and the extent to which Grayco required training. As a matter of summary judgment, the Court cannot determine whether the technicians exercised independent control over meaningful aspects of their business life.

b. *Relative Investments*

In considering the relative investments of the worker and the alleged employer, courts "compare the amount the alleged employer and employee each contribute to the specific job the employee undertakes." Thibault v. Bellsouth Telecommunications, Inc., 612 F.3d 843, 847 (5th

Cir. 2010). For example, in Eberline, the Fifth Circuit found the jury could have reasonably concluded that this factor weighed in favor of independent contractor status where there was testimony that installers were required to provide their own vehicle and all of their installation tools and supplies, where the equipment installed was supplied by DirecTV, and where the alleged employer owned only a couple of computers related to installation business, rented its office space, and routed calls through two persons in Ukraine. 646 Fed. App'x at 228.

Here it is undisputed that some technicians had their own tools and that Grayco would provide tools to those that did not have any. *Pl.'s Statement of Undisputed Facts*, Rec. Doc. 186-1, ¶18. Grayco notes that plaintiff Gremillion estimated the value of his tools to be about $2,000. (Rec. Doc. 192-9, at 8). Citing only the Plaintiffs' Statement of Undisputed Facts, Grayco says that the tools were not received from Grayco, but were sold by Grayco to the technicians. *Def.'s Statement of Disputed Facts*, Rec. Doc. 192-1, ¶11. Without presenting the relevant testimony of Mr. Glaspie, Grayco also asserts that Mr. Glaspie confirmed that Grayco would sell tools to technicians who did not have them. Id. The only evidence the Court can find in the record that Grayco's statements are accurate, however, is the "Equipment Lease to Own," paragraph of the Subcontractor Agreement, which provides that "[i]n the event the Contractor cannot provide the required tools and equipment specific to performing the work for the Company . . . the Contractor may lease from the Company, at a price specified in writing by the Company any and all tools and equipment required to perform the work." (Rec. doc. 192-7, at 3). The paragraph further provides that deductions would be made from the technician's paycheck and that "[o]nce paid in full, the Contractor shall own said equipment . . . ." Id. Thus although it is not entirely clear, it appears that the technicians provided their own tools.

It appears that technicians used their own vehicles when traveling to the jobs they performed for Grayco. (Rec. Doc. 192-9, at 51). Plaintiff Gremillion testified that he also paid for his own gas and maintenance on this truck. Id.

The equipment to be installed at the homes of customers is also provided by Grayco and stored at Grayco's warehouse for pickup by a technician. *Pl.'s Statement of Undisputed Facts*, Rec. Doc. 186-1,¶19. Grayco says the equipment is owned by Cox, but has not provided any evidence to support this assertion.

There is no evidence of Grayco's investment (in for example, its warehouse, any software used, or any office staff) for purposes of comparing the relative investments. Because of this, the Court cannot determine whether the technicians' investment outweighed that of Grayco as a matter of summary judgment.

c. *Opportunity for Profit and Loss*

The technicians' opportunity for profit or loss was not great. If they worked quickly, they could be assigned additional jobs and thereby complete more jobs in a day, earning more money than if they worked slowly. *Def.'s Statement of Disputed Facts*, Rec. Doc. 192-1, ¶¶13, 15. This presents some opportunity for profit.[2] But the technicians could not make decisions regarding costs incurred to increase their own profit. *Pl.'s Statement of Undisputed Facts*, Rec. Doc. 186-1,¶23. There is no evidence that they could perform additional work for customers on their own terms when on site.

d. *Skill and Initiative*

"The Fifth Circuit looks to both skills and ability to exercise initiative to determine whether workers are employees under the FLSA." Lang v. DirecTV, Inc., 801 F. Supp. 2d 532, 539 (E.D.

---

[2] Incidentally, the only reason this minimal opportunity for profit exists is because Grayco paid the technicians on a point based system rather than hourly. The premise of Plaintiffs' lawsuit is that the point based system was improper.

La. 2011); see Hopkins v. Cornerstone Am., 545 F.3d 338, 345 (5th Cir. 2008) ("Generally, we look for some unique skill set, or some ability to exercise significant initiative within the business.") (citations omitted). In Carrell, the Fifth Circuit observed that the welders were highly skilled as evidence of independent contractor status. 998 F.2d at 334. In Eberline, the Fifth Circuit determined that a reasonable jury could have concluded the installers exercised significant initiative where there was "testimony that installers could receive more installation jobs, and thus more profits, based on their efficiency; that they could profit from performing custom work; that they could perform additional services for customers; and that they could control the days that they worked."636 F. App'x at 229. In contrast, in Hopkins, the Fifth Circuit noted that the sales leaders' generalized management skills were not the kind of specialized skills relevant to the employee-status inquiry and concluded that the sales leaders had little opportunity to "exercise initiative within the business" because advertising, pricing, and the choice of insurance-policy providers with which to deal were controlled by the alleged employer. 545 F.3d at 345.

Here, the Plaintiffs argue that the skill and initiative factor weighs in favor of employment status because Grayco assigned daily tasks to the technicians. Citing Grayco's testimony that a technician would be looked upon unfavorably if he refused to do an assigned task without a valid excuse, Plaintiffs insist that technicians had no discretion regarding the performance of tasks assigned by Grayco. *Pl.'s Statement of Undisputed Facts*, Rec. Doc. 186-1, ¶24. The Court notes that being unable to turn down an assignment is not the same as being unable to use discretion in how the assignment is performed. Plaintiffs have not presented any evidence of the latter. Plaintiffs again point out that Grayco set their daily routes and assigned their tasks. Grayco points out that technicians could request additional work and that they could go directly from home to their first job if they did not need equipment for the day. Id. ¶¶ 18-19.

Although Grayco's corporate representative testified that Grayco has a "person designated that builds routes for the technician" each day (Rec. Doc. 186-12, at 9), Grayco insists that "Grayco did not design the routes for the daily tasks but instead assigned work to Plaintiffs through a dispatch team." *Def.'s Statement of Disputed Facts*, Rec. Doc. 192-1, ¶18. Grayco cites no evidence for its description. Moreover, even if Grayco has a dispatch team that assigns the work, it appears Grayco still concedes that Grayco, and not the technician, decides the work that the technician will be doing that day.

Plaintiffs note that technicians were trained by Grayco if they did not have at least six months of experience. Grayco again attempts to argue that whether it trained the technicians is a matter in dispute. However, as noted, the only facts it cites seem to conform to the general conclusion that Grayco trained inexperienced technicians. Grayco also argues that the technicians exhibited skill and initiative in performing their work because many of the Plaintiffs had experience in the industry and could earn more money if they completed more jobs in a shorter period of time.

The skill of the technicians here is indicative of independent contractor status. However, there is little evidence that the technicians could exercise initiative within their work beyond working more efficiently. Unlike the technicians in Eberline, there is no evidence that they could perform custom work or could control the days of the week they worked such that they could, as a practical matter, perform other work in addition to the work they performed for Grayco. Nonetheless, as a matter of summary judgment, the Court cannot conclude that the Plaintiffs' skill and initiative indicates employee status.

*e. Permanency of the Relationship*

Someone who works on a project by project basis is more likely an independent contractor, while someone who works "on a steady and reliable basis over a substantial period of time exclusively with the" alleged employer is more likely an employee. Cromwell, 348 F. App'x at 61.

Here, the relationship between the technicians and Grayco was not on a project by project or short term basis. *Pl.'s Statement of Undisputed Facts*, Rec. Doc. 186-1, ¶28. Grayco points out that the technicians were able to end their work for Grayco at any time. *Def.'s Statement of Disputed Facts*, Rec. Doc. 192-1, ¶22. But employees are commonly able to terminate their employment or be subject to termination at any time. Being able to end work at any time does not tend to indicate the technicians were independent contractors. The Court cannot conclude as a matter of summary judgment that the permanency of the technician's relationship with Grayco indicates employee status.

## Conclusion

As many courts have observed in FLSA cases, there are facts here that point in both directions. Grayco exercised significant control over the technicians' schedules and work by setting the days they worked, the jobs they would work each day, and the times those jobs would be completed subject to, at most, an ability to perform the next time slot's jobs early or to request additional work. But the technicians provided their own vehicles and tools. Yet there is no evidence of the comparative investment by Grayco. The technicians were allowed to work for competitors, but as a practical matter, given their long work schedules and inability to control their work days, it is unclear whether they did so. The technicians did not work on a project by project basis, but they could stop working for Grayco at any time. They had some opportunity for profit if

they worked efficiently, but there is no evidence they could perform custom work for customers or control costs in some way to increase their profit.

The question for the Court is whether the technicians were economically dependent upon Grayco, or instead in business for themselves.[3] As discussed above, disputed issues of material fact remain as to many of the factors. Moreover, with evidence pointing in various directions, the Court cannot weigh the various factors to determine the degree of the technicians' dependence on Grayco. Instead, the determination of whether the technicians were employees under the FLSA must be left for the jury to decide. Plaintiffs' Motion for Summary Judgment is DENIED.

New Orleans, Louisiana, this 28th day of June, 2018.

*[signature: Janis van Meerveld]*
Janis van Meerveld
United States Magistrate Judge

---

[3] Plaintiffs submitted a copy of report completed by the United States Department of Labor ("DOL") following its investigation of Grayco's practices in late 2011 and early 2012. The DOL concluded that Grayco and the installation technicians were in an employment relationship. However, some of the factual findings there are either not present or are disputed here. For example, the DOL investigation noted that the employees worked exclusively for Grayco and that Grayco "supervises and directs the work the employees do daily," fact issues which are disputed here. And unlike here, the DOL report states that the employees were required to return their tools to Grayco when they left the company and employees were paid at an hourly rate and a piece rate. Accordingly the DOL investigation report does not sway the Court's decision here. [JVM: Not sure where to put this. Doesn't seem quite right here. I thought of putting it right before the "control" factor, but at that point we will not yet have discussed the facts here, so it won't be possible to call out the differences as easily.].